```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
PLATINA BULK CARRIERS PTE LTD,
```

                    Plaintiff,                **MEMORANDUM AND ORDER**

          - against –                         20 Civ. 4892 (NRB)

```
PRAXIS ENERGY AGENTS DMCC,
PRAXIS ENERGY AGENTS LLC, and
PRAXIS ENERGY AGENTS PTE LTD,
```

                    Defendants.

```
------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court are cross-motions for summary judgment filed by plaintiff Platina Bulk Carriers Pte Ltd. ("plaintiff" or "Platina") and defendant Praxis Energy Agents LLC ("Praxis U.S." or "defendant") addressing plaintiff's veil piercing claims, which seek to hold Praxis U.S. and Praxis Energy Agents Pte Ltd. ("Praxis Singapore") liable for damages owed by Praxis Energy Agents DMCC ("Praxis Dubai").[1]  As the Court made clear at the motion to dismiss stage, although Praxis Dubai consented to jurisdiction in the Southern District of New York pursuant to a contract between plaintiff and Praxis Dubai, jurisdiction over Praxis U.S. and Praxis Singapore hinges on whether plaintiff can pierce the corporate veil.  See ECF No. 59

---

[1] As discussed further in the Procedural Background, plaintiff obtained a certificate of default against Praxis Dubai, see ECF No. 52, and Praxis Singapore is no longer represented by counsel or operational, see ECF No. 101.

at 7-8.   For the reasons outlined below, the Court finds that plaintiff cannot prove that the corporate veil should be pierced. Accordingly, the Court denies plaintiff's motion and having done so, need not reach defendant's motion.   However, even assuming that defendant's motion was the only motion before the Court, it would have been granted for lack of personal jurisdiction.

<u>**BACKGROUND**</u>

The events that led to this dispute have been summarized twice: first in our October 15, 2020 Memorandum and Order granting plaintiff's motion for alternative service, ECF No. 28, and later in our September 10, 2021 Memorandum and Order denying Praxis U.S. and Praxis Singapore's motion to dismiss, ECF No. 59.   The Court assumes familiarity with the straightforward facts of this case, but provides a brief summary below.

### A. Factual Background[2]

On October 1, 2019, Platina ordered bunker fuel from Praxis Dubai for its chartered bulk carrier vessel, the OCEANMASTER, and two weeks later ordered bunker fuel or its other chartered bulk carrier vessel, the OCEANBEAUTY.[3]   Pl. 56.1 ¶ 58; Praxis U.S. 56.1

---

[2] The following facts are drawn from the parties Local Civil Rule 56.1 statements and counterstatements, <u>see, e.g.,</u> ECF No. 120, Praxis U.S.'s Local Rule 56.1 statement ("Praxis U.S. 56.1"); ECF No. 134, plaintiff's Local Rule 56.1 statement, ("Pl. 56.1"); ECF No. 133, plaintiff's Local Rule 56.1 Counterstatement ("Pl. 56.1 Counterstatement"); ECF No. 147, Praxis U.S.'s Local Rule 56.1 Counterstatement ("Praxis U.S. 56.1 Counterstatement"), and materials submitted by the parties over the course of this litigation.

[3] Platina's purchase of the bunker fuel for its chartered vessels is evidenced by bunker nominations, which are written agreements for the purchase and

Counterstatement ¶ 58; ECF No. 26 at 9.   The bunker fuel was supplied by Al Arabia Bunkering Company LLC ("Al Arabia") to the two vessels on October 19 and October 24, 2019, as evidenced by Bunkers Delivery Receipts addressed to Praxis Dubai.   ECF No. 26 at 11, 14.   Platina paid Praxis Dubai for the bunker fuel.   Praxis U.S. 56.1 ¶ 27; Pl. 56.1 ¶¶ 60, 65.   However, Praxis Dubai did not pay Al Arabia.[4]   Pl. 56.1 ¶ 61.

On November 27, 2019, before the OCEANMASTER departed the United Arab Emirates, the vessel was arrested due to Praxis Dubai's failure to pay Al Arabia.   Pl. 56.1 ¶ 61; Praxis U.S. 56.1 Counterstatement ¶ 61.   To free the vessel from arrest, Platina paid Al Arabia $148,472 and incurred running costs of $89,585.90 while the vessel was under arrest, which Platina seeks to recover.   Pl. 56.1 ¶¶ 61-62; Praxis U.S. 56.1 Counterstatement ¶¶ 61-62.   The OCEANBEAUTY has not been arrested.   Praxis U.S. 56.1 ¶ 104; Pl. 56.1 Counterstatement ¶ 104.

---

delivery of bunker fuel, that incorporate by reference Praxis Dubai's terms and conditions.   At the Court's request, plaintiff submitted: (1) the terms and conditions referenced in the Complaint, see ECF No. 26 at 2-8 ("Contract"); (2) the Bunker Nominations from Praxis Dubai for both vessels, see ECF No. 26 at 9-10 and 12-13; and (3) Bunker Delivery Receipts from Al Arabia for both vessels, see ECF No. 26 at 11 and 14.   Both parties reference this submission in their 56.1 Statements.   To the extent these documents were not submitted in the voluminous materials submitted with the parties' papers, the Court will consider them as part of the record.

[4] While Praxis U.S. does not admit that Praxis Dubai failed to pay Al Arabia, it at least acknowledges that Al Arabia alleged Praxis Dubai failed to pay Al Arabia, leading to the arrest of the vessel.   See Praxis U.S. 56.1 Counterstatement ¶ 61.   Notably, although Praxis Dubai was previously represented by the same counsel as Praxis U.S., no evidence has ever been submitted establishing that Praxis Dubai actually paid Al Arabia.

### B. Procedural Background

On June 25, 2020, plaintiff filed this action requesting indemnification from Praxis Dubai for damages it incurred after Praxis Dubai failed to pay Al Arabia and seeking to hold Praxis Singapore and Praxis U.S. liable as the alter egos of Praxis Dubai. See ECF No. 1 ("Compl."). On July 7, 2020, plaintiff filed an Amended Complaint. See ECF No. 13 ("Am. Compl."). After at least fifteen attempts to serve Praxis U.S., plaintiff moved for authorization to use alternative methods of service on Praxis U.S., asserting that service on Praxis U.S. would be effective as to all three defendants on an alter ego theory. See ECF Nos. 24-25, 27. On October 15, 2020, this Court granted plaintiff's motion for alternative service but stated that it took no view on its alter ego theory. See ECF No. 28. Five days later, J. Stephen Simms, moved to appear pro hac vice for all three defendants, which application this Court granted. See ECF Nos. 31, 33.

On December 23, 2020, Praxis Singapore and Praxis U.S. moved to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, arguing that they were not parties to the contract between plaintiff and Praxis Dubai and they could not be held liable on an alter ego theory.[5] See ECF Nos. 44-45. As it must

---

[5] Praxis Dubai, although then represented by counsel, did not join the motion to dismiss filed by the other two defendants. When Praxis Dubai did not answer or otherwise respond to the complaint, plaintiff obtained a Certificate of

at that stage, the Court accepted the allegations in the Amended Complaint and the materials incorporated by reference therein as true.  See ECF No. 59 at 4.  The Court denied the motion, finding that plaintiff had pled its prima facie case, but did not reach the ultimate issue of alter ego liability, which this opinion will address.  Id. at 14.  Praxis U.S. subsequently answered the Amended Complaint.  See ECF No. 60.  Shortly thereafter, the parties began discovery.[6]  See ECF No. 64.

During the course of discovery, Mr. Simms moved to withdraw as counsel for Praxis Dubai and Praxis Singapore, explaining that the two defendants "have ceased operation and are not in the position to pay counsel for further work."  See ECF No. 92.  The Court granted the motion on September 22, 2022.  See ECF No. 101.

On July 18, 2023, the Court granted defendant Praxis U.S. leave to file a motion for summary judgment.  See ECF No. 115. Praxis U.S. filed its motion for summary judgment on August 18, 2023.  See ECF No. 119 ("Mot.").  On September 18, 2023, plaintiff sought leave to file a cross-motion for summary judgment, which was granted.  See ECF Nos. 126-28.  On September 29, 2023, plaintiff filed its cross-motion for summary judgment and

Default against Praxis Dubai from the Clerk of Court on January 21, 2021.  See ECF Nos. 50-52.

[6] The Court granted multiple discovery deadline extensions, see ECF Nos. 71, 79, 95, 104, 111, and resolved several discovery disputes.

opposition to defendant's motion.  See ECF No. 131 ("Cross Mot.").
On December 1, 2023, defendant filed its reply on its motion for
summary judgment and its opposition to plaintiff's cross-motion.
See ECF No. 146 ("Def.'s Reply").  Plaintiff filed its reply on
its cross-motion on December 22, 2023.[7]  See ECF No. 153 ("Pl.
Reply").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment
is appropriate where "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material
fact exists if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'"  Nick's Garage, Inc.
v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[7] Along with their papers, the parties submitted a number of exhibits, many of
which were filed under seal.  Unless the Court receives a persuasive submission
by one of the parties, it is the Court's intention to unseal these documents in
two weeks' time.  To support its motion, Praxis U.S. also submitted the
declaration of Theodosios Kyriazis, see ECF No. 146-2 ("Kyriazis Decl."), the
owner of Praxis U.S., and Stefania Tsgali, see ECF No. 146-3 ("Tsagli Decl."),
who is Mr. Kyriazis' wife and is employed by Praxis U.S.  Plaintiff submitted
a number of declarations in support of its cross-motion, including: (1) the
declaration of plaintiff's counsel, Thomas L. Tisdale, see ECF No. 132 ("First
Tisdale Decl."); (2) the declaration of plaintiff's Operation Manager, Mr. Ankit
Mishra, ECF No. 142, Declaration of Ankit Mishra ("Mishra Decl."); (3) a
supplemental declaration of Mr. Tisdale, see ECF No. 154 ("Supplemental Tisdale
Decl."); and (4) the declaration of plaintiff's predecessor's Operations Manager
and employee of Platina Business Management Pvt Ltd, India, which provides
vessel operations management to plaintiff, Mr. Akshay Lele, see ECF No. 155,
Declaration of Mr. Akshay Lele ("Lele Decl.").

(1986)).  "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

"The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Id. at 83.

Once the moving party has satisfied their burden, to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "Conclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990).  There must be more than a "scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.  In other words, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate."  Citizens Bank of Clearwater, 927 F.2d at 710.

"The same standard[s] . . . appl[y] when," as here, "the court is faced with cross-motions for summary judgment.  Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration."  Bell v. Pham, No. 09 Civ. 1699 (PAC), 2011 WL 1142857, at *2 (S.D.N.Y. Mar. 24, 2011) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

## DISCUSSION

At the threshold, Praxis U.S. continues to contest whether the Court may properly exercise personal jurisdiction over it. Indeed, as the Court noted in our September 10, 2021 Memorandum and Order, while Praxis Dubai consented to jurisdiction by virtue of the forum selection clause in section 22.02 of the Contract, this Court's jurisdiction over any other Praxis entity depends on whether they are alter egos of Praxis Dubai.  See Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 142-43 (2d Cir. 1991).  Accordingly, the Court now turns to this threshold question.

**A. Alter Ego Liability Under Federal Common Law**

"Under federal common law, courts are reluctant to pierce a corporate veil and impose liability on a separate, related entity, but may do so under extraordinary circumstances."[8] <u>Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC</u>, 851 F. Supp. 2d 504, 509 (S.D.N.Y. 2012). The corporate veil may be pierced "where (1) a corporation uses its alter ego to perpetrate a fraud <u>or</u> (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." <u>Status Int'l S.A. v. M & D Maritime Ltd.</u>, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (citing <u>Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.</u>, 782 F.2d 329, 342 (2d Cir. 1986)) (emphasis in original). Courts in the Second Circuit consider a number of factors to examine alter ego liability, including:

> "(1)disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of business discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm['〕s length; (8) whether the corporations are treated

---

[8] The Court applies federal common law to the veil-piercing analysis here because (1) the Contract's choice of law clause calls for the application of the "General Maritime Law of the United States of America," Contract § 22.01, (2) the Court previously found that the parties consented to the application of federal common law, and (3) the parties continue to rely on it in their papers. Thus, the Court need not perform a choice of law analysis. <u>See</u> <u>Louis Dreyfus Co. Freight Asia Pte LTD v. Uttam Galva Metallics Ltd.</u>, 256 F. Supp. 3d 509, 513 n. 6 (S.D.N.Y. 2017) (citing <u>Blue Whale Corp. v. Grand China Shipping Dev. Co.</u>, 722 F.3d 488, 495-500 (2d Cir. 2013)).

>  as independent profit centers; (9) payment or guarantee
>  of the corporation's debts by the dominating entity, and
>  (10) intermingling of property between the entities."

Clipper Wonsild Tankers Holding, 851 F. Supp. 2d at 509-10.  No

one factor is dispositive and "[t]here is no set rule as to how

many of these factors must be present to warrant piercing the

corporate veil." Williamson v. Recovery Ltd. P'ship, 542 F.3d 43,

53 (2d Cir. 2008) (citation omitted).  Rather, "the general

principle guiding courts in determining whether to pierce the

corporate veil has been that liability is imposed when doing so

would achieve an equitable result." Id. (citation omitted).

        "The alleged domination . . . must have occurred at the same

time as the transaction that is complained of." In Re Arbitration

Between Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd., 774

F. Supp. 840, 845 (S.D.N.Y. 1991).  However, "[t]he inquiry for

piercing the corporate veil examines the full spectrum of the

relations between the parent corporation and its alleged alter

ego." D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd., 348 F.

Supp. 3d 365, 391 (S.D.N.Y. 2018), aff'd sub nom. D'Amico Dry

D.A.C. v. Sonic Fin. Inc., 794 F. App'x 127 (2d Cir. 2020) (quoting

Holborn Oil, 774 F. Supp. at 845).

        **B. Application**

        The first challenge before us is to discern what theory of

veil piercing the plaintiff is advocating.  This is difficult

because Platina proffers several approaches.  We begin by

identifying two traditional forms of veil piercing that plaintiff is not advocating.  First, plaintiff is not relying on the fraud prong of veil piercing for the obvious reason that Platina was not the victim of a fraud committed by any of the named defendants.[9] Second, while plaintiff asserts that "all roads lead to [Mr. Kyriazis]," Cross Mot. at 9, 19, plaintiff does not seek to pierce the corporate veil to hold Mr. Kyriazis personally liable.  The reason for that decision is obvious: it is clear that the corporate form was followed sufficiently so that such a theory of veil piercing would not succeed.

We now turn to the theory that plaintiff does espouse, namely that the corporate veil shielding Praxis U.S. should be pierced because "each of the defendants was 'so dominated' by [Mr. Kyriazis] as to have lost its individual identity."  Id. at 15. Stated otherwise, "[p]laintiff submits that the [d]efendant entities are alter egos of one another."  ECF No. 138, plaintiff's Individual Rule 2(E)(1) summary letter.  Plaintiff cites only one case in support of this theory: Kirno Hill Corp. v. Holt, 618 F.2d 982 (2d Cir. 1980).  However, Holt provides no support whatsoever for plaintiff's theory because the plaintiff in that case sought to hold an alleged undisclosed principal of a vessel charterer personally liable for defaulted payments and, in any event, the

---

[9] Neither plaintiff's pleadings nor any of its motion papers raise an allegation that there was a fraud perpetrated on plaintiff.

Second Circuit rejected any veil piercing theory because the principal was merely the sole owner of the business.  Id. at 984-85.

In contrast, Praxis U.S. asserts yet another theory, namely, that it is not the alter ego of Praxis Dubai, as if the Dubai entity is the dominating company.  Further, defendant maintains that all three companies are independent of each other.

To recap, plaintiff has not articulated a viable theory of veil piercing to sustain jurisdiction, and thus our decision could end now.  However, for completeness, we will assume that plaintiff had chosen to advance a traditional veil piercing theory where Praxis U.S. was the company that dominated Praxis Dubai or Praxis Singapore and turn to an exploration of whether the record that has been developed and presented is sufficient to support traditional veil piercing based on domination.

At the motion to dismiss stage, this Court stated that plaintiff's pleadings had plausibly established "that the three companies have overlapping personnel (including one individual who appears to be the key person at all three entities), that they publicly hold themselves out on a single web address to conduct the exact same business, and that Praxis Dubai likely used its corporate sister company to shelter assets while evading obligations to its venders."  ECF No. 59 at 11-12.  However, as discussed below, after nearly two years of discovery, plaintiff

has not demonstrated that Praxis U.S. or Praxis Singapore so
dominated or disregarded Praxis Dubai's corporate form, such that
Praxis Dubai was carrying on the business of the other Praxis
entities.  To be clear, the Court is not saying that there is no
relationship between the named defendants.  However, the issue
before the Court is whether any of those relationships rises to
the level of domination of any Praxis entity by another sufficient
to support piercing the corporate veil.  The answer to that
question is no.

### 1. Overlap in Ownership and Personnel

The Court turns first to whether there is any overlap in
ownership or personnel among the Praxis entities, as this factor
is most the salient to plaintiff's arguments and is perhaps the
most contested issue between the parties.  Certain facts are not
in dispute: (1) at least as of 2011, all three named defendants
were subsidiaries of Praxis Energy Agents S.A. ("Praxis S.A."), an
entity that was liquidated on December 12, 2017 and no longer
exists;[10] (2) since at least November 2017, Mr. Kyriazis has been
the sole shareholder of Praxis U.S., see Praxis U.S. 56.1 ¶ 17;
Pl. 56.1 ¶ 14, and (3) Mr. Kyriazis was the sole owner and

---

[10] The parties do not dispute that Praxis S.A. was an entity incorporated in the
British Virgin Islands.  Praxis U.S. 56.1 Counterstatement ¶ 6.  Although Praxis
Dubai, Praxis U.S., and Praxis Singapore were all owned by Praxis S.A., Def.'s
Reply at 2, the company was placed into liquidation on December 12, 2017 and no
longer existed well before October 2019, See Praxis U.S. 56.1 Counterstatement
¶ 8; see also First Tisdale Decl., Ex. 11 (Liquidator's Final Report) at 15.

shareholder of Praxis Singapore, Mot. at 3, until 2021, when he transferred the Praxis Singapore shares to his wife, Stefania Tsagli, see Pl. 56.1 ¶ 18; Praxis U.S. 56.1 Counterstatement ¶ 18.[11]  However, whether Mr. Kyriazis had any ownership in Praxis Dubai or otherwise wielded any influence at that entity is disputed.

According to Praxis U.S., Mr. Kyriazis helped start Praxis Dubai in 2011 as a subsidiary of Praxis S.A.  Mot. at 3.  Defendant also claims that Praxis Dubai became an independent company in 2016, however, Mr. Kyriazis denies knowledge of its current shareholders.  Id.  In response, plaintiff points to a trading license issued in May 2011 by the Government of Dubai that identifies Mr. Kyriazis as a "manager." [12]  See First Tisdale Decl., Ex. 19.  Plaintiff also cites the inadmissible 2018 deposition testimony of Mr. Dimitrios Mertikas, the then General Manager of Praxis Dubai, who testified that the shareholders of Praxis Dubai

---

[11] Regarding Praxis Dubai's personnel, plaintiff denies that Praxis Dubai had "at least five employees unique to it that oversaw bunker trading and related activities," based on testimony from Mr. Mertikas, the then General Manager of Praxis Dubai, that the three Praxis entities "have an affiliation that can be foreseen they are under, as you mentioned, the Praxis umbrella."  See Pl. 56.1 Counterstatement ¶ 39; see also First Tisdale Decl., Ex. 1 (Deposition Testimony of Mr. Dimitrios Mertikas or "Mertikas Depo. Tr.") at 29:2-4.  As noted infra at note 13, this testimony is inadmissible and plaintiff's denial is not properly supported by the record.

[12] The parties also dispute the import of Mr. Kyriazis' designation as the manager on the trading license, which is also unclear to the Court.  Praxis U.S. suggests that Mr. Kyriazis was an authorized representative of the company, but that role did not provide him with any authority at Praxis Dubai, see Mot. at 3, 13, while Platina suggests that this indicates Mr. Kyriazis played a larger role at the company and his testimony to the contrary is not credible, see Cross Mot. at 12.

are "Mr. Theodosios Kyriazis and Mrs. Stefania Tsagli."[13] Mertikas Depo. Tr. at 24:1-9.

Plaintiff urges this Court to discredit the testimony of Mr. Kyriazis instead of considering the ownership of Praxis Dubai a disputed fact.  The Court is mindful that it is "the duty of district courts not to weigh the credibility of the parties at the summary judgment stage," see Barua v. City of New York, No. 14 Civ. 584 (NRB), 2016 WL 7494875, at *6 (S.D.N.Y. Dec. 29, 2016), except in the narrow circumstance where a party relies on their own testimony that is "so replete with inconsistencies and improbabilities that no reasonable juror" could find it credible, Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005)(internal quotations and citation omitted).  While it is true

---

[13] Both parties rely on various portions of Mr. Mertikas' testimony, even though defendant makes one objection in its Rule 56.1 Counterstatement that the testimony lacks foundation, see Praxis U.S. 56.1 Counterstatement ¶ 24. However, Mr. Mertikas' deposition testimony was taken in another case in this District where Praxis Dubai was the only named defendant.  See Stralia Maritime S.A. et. al. v. Praxis Energy Agents DMCC, 18 Civ. 04150 (RH).  The Court finds that Mr. Mertikas' testimony is hearsay evidence and the hearsay exception for former testimony does not apply because there is no showing that Praxis U.S. "had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination."  Fed. R. Evid. 804(b)(1)(B).  Even if the testimony were admissible, plaintiff cannot pick and choose the portions of his testimony it finds beneficial and ignore the portions that undermines its arguments. Specifically, the Court notes that: (1) as discussed above, while plaintiff seeks to impute Mr. Kyriazis' designation as a "manager" on a Praxis Dubai trading license, Mr. Mertikas also held a manager title at Praxis Dubai, yet there is no argument that he was Praxis Dubai's owner and (2) Mr. Mertikas testifies that as General Manager, he had discretion, rather than needing to defer to Mr. Kyriazis, to handle disputes that arose with Praxis Dubai's clients, supervise the daily activities of Praxis Dubai, and provide direction to Praxis Dubai's personnel, see Praxis U.S. 56.1 Counterstatement ¶ 44 (citing Mertikas Depo. Tr. at 13:6-18, 16:9-13, 76:6-13, 117:6-118:9, 119:15-120:2, and 109:3-6). On balance, this testimony undermines more of plaintiff's arguments than it supports.

that defendant supports various arguments with Mr. Kyriazis'
testimony, his testimony is not so replete with inconsistencies
that a credibility determination is warranted.  In any event, the
Court need not resolve the dispute because, even if this factor
weighed in plaintiff's favor, plaintiff would not be entitled to
summary judgment.  Thus, however questionable the testimony relied
on by Praxis U.S. may be, the Court need not rely on this factor
to reach its decision.

### 2. Praxis Dubai's Business Discretion and Arms' Length Dealings

Related to the disputed overlap in ownership, plaintiff
argues that Praxis Dubai did not exercise independent business
discretion because Mr. Kyriazis' "approval was necessary for all
important decisions" and therefore, the Praxis entities did not
deal with each other at arms' length.  Pl. Reply at 10.
Specifically, plaintiff points to two instances where Mr. Kyriazis
appeared on emails related to Praxis Dubai's business.  First, in
October and November 2019, Mr. Kyriazis was copied on emails
between Praxis Dubai's General Manager and Mr. Simms, counsel for
the Praxis entities.  See First Tisdale Decl., Ex. 8.  Second, in
November 2019, Mr. Kyriazis identified himself as a "legal advisor"

on an email and used a Praxis Dubai email signature in correspondence with third parties.[14]   First Tisdale Decl., Ex. 25.

Plaintiff's efforts to cast Mr. Kyriazis as controlling Praxis Dubai are unavailing and do not demonstrate that the Praxis entities did not deal with each other at arms' length.   First, although many of plaintiff's arguments are focused on Mr. Kyriazis, as noted earlier, it is telling that plaintiff neither named Mr. Kyriazis as a defendant in this case nor sought to hold him individually liable for the actions of Praxis Dubai.   Second, as defendant notes, the emails plaintiff cites are inconsequential acts that do not demonstrate any "exercise [of] nearly unbridled discretion over the corporation's business activities."   Clipper Wonsild Tankers, 851 F. Supp. 2d at 511 (internal quotation marks omitted).   These emails do not demonstrate that Mr. Kyriazis exercised actual domination or that Mr. Kyriazis was the key individual at all three Praxis entities.   On this record, plaintiff has not demonstrated that Praxis U.S., or even Praxis Singapore, "exercised nearly unbridled discretion over the corporation's business activities and . . . 'other officers . . . occupied essentially ministerial roles at the company."   Id. (quoting Ridge

---

[14] Plaintiff also points to Mr. Mertikas testimony that he reported to Mr. Kyriazis before January 2018 and although payments were prepared by an accounts department, they were released by Mr. Kyriazis.   Pl. 56.1 ¶¶ 22, 24.   However, as discussed supra at note 13, the inadmissible testimony of Mr. Mertikas also says he had discretion over Praxis Dubai's daily activities.

Clearing & Outsourcing Solutions, Inc. v. Khashoggi, No. 07 Civ. 661(RJH), 2011 WL 3586455, at *9 (S.D.N.Y. Aug. 12, 2011)).

### 3. Corporate Formalities

Turning to the next factor, defendant has demonstrated that Praxis U.S. was properly registered as a Limited Liability Corporation and maintained its own books and records that were reviewed by a Certified Public Accountant.   Plaintiff concedes that Praxis U.S. "followed all of its requirements as an LLC during the operative time period."   Cross Mot. at 17.   In addition, records submitted by plaintiff, including Praxis Dubai's trading license, First Tisdale Decl., Ex. 19, and Praxis Singapore's financial statements that were submitted to the Singaporean government authorities, id., Exs. 17-18, show that the other Praxis entities were registered in their jurisdictions and adhered to corporate formalities.   Indeed, even the marketing materials plaintiff argues show that the Praxis entities were marketing themselves as a single entity clearly reveal that the various Praxis locations were separate corporate entities.[15]   See Lele Decl. ¶ 4 (citing Mishra Decl., Ex. B).

---

[15] Plaintiff argues that its efforts to show that Praxis Dubai and Praxis Singapore did not adhere to corporate formalities has been frustrated by the assertions of Mr. Kyriazis and Ms. Tsagli that they do not have any documents. See Pl. Reply at 8.   However, plaintiff has had every opportunity in nearly two years to conduct discovery, including from third parties such as governmental entities, and had the opportunity to explore these issues with Mr. Kyriazis and Ms. Tsagli during their depositions.

Plaintiff makes much of the fact that the three Praxis entities were represented by the same counsel.[16]  Plaintiff relies on <u>Hannah Bros. v. OSK Mktg. & Commc'ns, Inc.</u>, for the proposition that where different defendants "have been represented by the same counsel and have answered as one voice might, in appropriate circumstances, indicate a disregard for the corporate form supporting alter ego liability."  609 F. Supp. 2d 343, 350 (S.D.N.Y. 2009) (internal citations and quotation marks omitted).  However such an inference is inappropriate here.  While Mr. Simms filed a <u>pro hac vice</u> motion to appear as counsel for all three Praxis entities, <u>see</u> ECF No. 31, the Praxis entities have not answered in one voice.  Indeed, Praxis Dubai never filed an answer, which permitted plaintiff to obtain a certificate of default.  <u>See</u> ECF No. 52.  Mr. Simms also informed that "Praxis Singapore and Praxis Dubai have ceased operation" and could not instruct counsel to support his motion to withdraw as counsel for Praxis Dubai and Praxis Singapore.[17]  <u>See</u> ECF No. 92.

---

[16] Plaintiff also submitted under seal an exhibit showing that Praxis Singapore made a payment to Mr. Simms in the exact amount of counsel's November 2019 invoice to Praxis Dubai.  <u>See</u> ECF No. 137-14.  The exhibit also shows that on October 8, 2019, Praxis Dubai paid Mr. Simms for legal services.  <u>Id.</u>  However, that exhibit neither makes any mention of Praxis U.S. nor shows that Praxis Dubai was diverting funds to Praxis Singapore, as discussed further below.

[17] While the Court shares plaintiff's curiosity as to how Praxis Dubai instructed counsel to appear in 2020, when it had ceased doing business in 2019, Praxis U.S. 56.1 Counterstatement ¶ 27, the Court will not infer that there were any misrepresentations on the part of defendants' counsel.

### 4. Financial Commingling, Independent Profit Centers, Capitalization, and Guarantees

Next, the Court turns to four factors it views as interrelated in the context of the instant dispute: financial commingling, independent profit centers, capitalization, and the lack of guarantees.[18]  Plaintiff has shown that there were various financial interactions between the Praxis entities.  First, the parties do not dispute that clients of the various Praxis entities could make payments to other Praxis entities.  <u>See</u> Mot. at 18; Cross Mot. at 7.  Second, for reasons unknown to the Court, plaintiff's account was transferred from Praxis Dubai to Praxis Singapore in 2015, and back again in 2018, after the companies were no longer subsidiaries of Praxis S.A.[19]  <u>See</u> Lele Decl. ¶ 7.

---

[18] There is also no indication that Praxis Singapore or Praxis U.S. guaranteed the debts of Praxis Dubai.  While plaintiff points to Praxis Singapore's financial statements indicating that there is a $4 million bank overdraft facility with "a related party, a company with [a] common beneficial owner," Cross Mot. at 22, there is no information in this record that Praxis Singapore or Praxis U.S. was guaranteeing the debt of Praxis Dubai, particularly when plaintiff has not been able to indisputably demonstrate that Mr. Kyriazis is the owner of all three Praxis entities.  Indeed, if there was an inter-company guarantee, presumably there would have been no lawsuit because another entity would have paid Praxis Dubai's debt to Al Arabia.

[19] Defendant also asks the Court to ignore evidence provided by plaintiff from before October 2019.  <u>See</u> Def.'s Reply at 4.  While defendant correctly asserts that the alleged domination must take place "at or about the time of the complained-of transaction," <u>D'Amico Dry D.A.C.</u>, 348 F. Supp. 3d at 391, "the inquiry for piercing the corporate veil examines the full spectrum of the relations between the parent corporation and its alleged alter ego," <u>Holborn Oil</u>, 774 F. Supp. at 845.  Therefore, the Court will consider evidence from before the complained-of transaction, particularly with respect to the relationship between the plaintiff and various Praxis entities.  However, the Court need not revisit the previous corporate structure under Praxis S.A. which the parties agree no longer existed by October 2019 because the company had been placed into liquidation on December 12, 2017, <u>see</u> First Tisdale Decl., Ex. 11 (Liquidator's Final Report) at 15.

In addition, Praxis U.S.'s accounting records reflect an offset account whereby Praxis U.S. accounted for payments made or funds received between the various Praxis entities.  Def.'s Reply at 13.  These records reflect that between 2018 and February 2019, Praxis U.S. and Praxis Dubai transferred over $900,000 between each other.[20]  See Cross Mot. at 19.  However, Praxis U.S. explains in its opening brief that this allowed the Praxis entities to "free up the credit line" to "transact business with third parties or oil vendors."  Mot. at 18.  Praxis U.S. also maintains that this is a common practice in the industry and among small companies, the transactions were at arms-length and legitimate, set-offs were used with other third parties and not limited to Praxis entities, and the account was maintained in accordance with U.S. accounting principles.  See Mot. at 17-18.  While these account records certainly show a level of interrelation between the Praxis entities, they do not reflect that Praxis U.S. was dominating or draining Praxis Dubai's funds or that they were not treated as independent profit centers.  In fact, Ms. Tsagli's deposition testimony and a sealed exhibit marked as "2019 Ledger" demonstrates that a payment from Praxis Dubai to Praxis U.S. in February 2019 of $309,081.56 was to transfer the funds Praxis Dubai received

---

[20] Plaintiff also notes that during 2020, Praxis U.S. and Praxis Singapore paid over $5 million for the account of the other and had balances due to each other exceeding $800,000.  Cross Mot. at 18.

from a Praxis U.S. client who sought to pay in euros, after subtracting invoices Praxis Dubai paid on Praxis U.S.'s behalf to "open credit."  ECF No. 122-8; Tsgali Decl. ¶¶ 14-17.[21]

In addition, although the parties agree that Praxis U.S. was adequately capitalized during the relevant period, plaintiff notes that Praxis Dubai represented in a separate action in federal court that Praxis Dubai ceased to operate in November 2019 and, at some point after 2018, Praxis Singapore "experienced a downturn in business" and no longer has substantial assets.  Pl. 56.1 ¶¶ 30-31.  While plaintiff seeks to frame Praxis U.S. as "the last branch standing" among the Praxis entities, Cross Mot. at 18, it fails to show that the undercapitalization was caused by Praxis U.S.'s domination or that Praxis Dubai was merely a shell carrying on Praxis U.S. business or that Praxis U.S. provided any capital to the company or was otherwise responsible for its own capitalization issues.[22]

### 5. Common office space, address, and telephone numbers, and intermingled property

---

[21] For additional evidence that funds were commingled, plaintiff points to another case in the District before Judge Abrams, Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC, 632 F. Supp. 3d 562 (S.D.N.Y. 2022), in which Liberty Highrise alleged that although it purchased bunker fuel from Praxis Dubai, it was directed to make payment to Praxis Singapore.  632 F. Supp. 3d 562, 567 (S.D.N.Y. 2022).  However, this allegation was not ruled on by the Court as Judge Abrams explicitly stated her decision was based on the allegations in that plaintiff's Amended Complaint, id. at 570.

[22] In any event, the Court notes that the Praxis entities are engaged in the bunker broker industry, and it is not clear that this is a capital-intensive enterprise in any respect.

There is no dispute that the parties maintained separate corporate offices across the globe.  There is also no dispute that the various Praxis entities shared common resources such as: (1) an email domain; (2) an accounting software; (3) a credit insurance policy covering all three entities; (4) the same Praxis logo; and (5) nearly identical bunker nomination forms.[23]  Praxis U.S. maintains that these shared resources were efforts by the various Praxis entities, as small entities, to achieve economies of scale through volume purchasing power.  See Def.'s Reply at 21. Moreover, while the domain name and software were shared, the record shows that each entity did not have access to each other's emails, Def.'s Reply at 18, and at least Praxis U.S. had "its own server for its accounting software," meaning that "there was no link between the financial information in the accounting software between the companies," Tsagli Decl. ¶¶ 7-8.  At most, the evidence with respect to these factors reflects that these entities were related, but it fails to demonstrate that any one of the Praxis entities dominated the other through these shared resources.

---

[23] Plaintiff's Amended Complaint alleged that the defendants conducted the same business pursuant to the same terms and conditions.  Indeed, the Contract with Praxis Dubai notes that its terms and conditions "which can be found also at www.praxisenergyagents.com are the general standard terms and conditions under which each of the companies . . . is prepared to enter [into an] agreement. . ." Contract §1.00.  While Praxis U.S. admits that the bunker nomination forms issued by Praxis U.S. included similar language, Praxis U.S. 56.1 Counterstatement ¶¶ 40-41, it also argues that by August 2019, Praxis U.S. had its own terms and conditions that were not shared with Praxis Dubai and Praxis U.S. never had a website.  Praxis U.S. 56.1 Counterstatement ¶¶ 40, 42.  Given the other undisputed facts, the Court need not resolve this issue.

### 6. Equity Considerations

Looking beyond the Second Circuit's factors, the Court is not persuaded that piercing the corporate veil is warranted here based on equitable considerations.  The Court notes that if this case was outside of the maritime context, and shoreside law applied, plaintiff would have been an innocent third party who clearly fulfilled its obligation to Praxis Dubai, and the supplier would have had no right to take any action against plaintiff.  Stated otherwise, but for the existence of the self-help measure of a maritime lien, Al Arabia would have had no recourse against plaintiff.  Furthermore, there is no evidence in the record that the funds plaintiff actually paid to Praxis Dubai were siphoned off by another Praxis entity.  However, it is clear that the Praxis entities are interrelated companies.  While the relationships may have provided the Praxis entities with economies of scale with various third parties and showed that the businesses had a network that spanned across several continents, there is no evidence that Praxis U.S. or Praxis Singapore so dominated the other entities that they carried on its business or that Praxis Dubai's corporate form was so disregarded that it transacted another entity's business.  To the contrary, Praxis U.S. has demonstrated that any overlap with Praxis Dubai does not show that they were alter egos of one another, nor has Platina shown that all three companies were alter egos of one another, even if there was a corporate veil

piercing theory that would support their argument.  It follows that neither Praxis U.S. nor Praxis Singapore are the alter egos of Praxis Dubai.

Because plaintiff cannot show that Praxis U.S. is the alter ego of Praxis Dubai, the Court does not have personal jurisdiction over Praxis U.S., <u>see</u> <u>Wm. Passalacqua Builders</u>, 933 F.2d 131 at 141-42.  Accordingly, without personal jurisdiction over Praxis U.S., the Court cannot address the issues of liability or plaintiff's request for a declaratory judgment.

<u>**CONCLUSION**</u>

For the reasons above, plaintiff's motion for summary judgment is denied.  The Court need not reach defendant's motion, but assuming that it was the only motion before the Court, it would have been granted for lack of personal jurisdiction.  Because plaintiff obtained a certificate of default against Praxis Dubai in January 2021 and the Court does not have personal jurisdiction over the other two named defendants, the Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 118 and 130, and close the case.

**SO ORDERED.**

Dated:     March 20, 2024
           New York, New York

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE